IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Plaintiff-Respondent, § | |
| § | |
| v. § | Cr. No. C-05-751 |
| § | C.A. No. C-06-448 |
| ANDRES CASAS, § | |
| Defendant-Movant. § | |

**ORDER DENYING IN PART MOTION TO
VACATE, SET ASIDE OR CORRECT SENTENCE,
AND ORDER SETTING EVIDENTIARY HEARING**

Pending before the Court is Andres Casas' ("Casas") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum. (D.E. 26, 30.) The motion also includes allegations raised in Casas' later motion to supplement, which the Court granted. (D.E. 33, 34.) The government has filed a motion for summary judgment pursuant to Casas' plea agreement waiver, and has also filed, in the alternative, a response and motion to dismiss Casas' § 2255 motion. (D.E. 37, 38.) Casas had until March 28, 2007 to reply. (See D.E. 31 at 2 (giving Casas 30 days after service of the government's response to reply); D.E. 37 at 21 (indicating that the government's response was served via mail on February 23, 2007).) To date, no reply has been received.

As discussed in detail herein, Casas' plea agreement contained a waiver of his right to file any § 2255 motion, but two of his claims arguably challenge the validity of the waiver. The first of these – a claim that the Court violated Rule 11 by failing to advise Casas of the effect of his criminal history – is clearly contradicted by the record and is denied. The second claim is that his retained counsel, Richard W. Rogers, III, provided ineffective assistance at his plea by promising Casas he would receive a 24-month sentence. Although this claim is contradicted by his sworn testimony at his rearraignment, Casas has provided his own affidavit in support of his claim, as well as the affidavit of a third party, his girlfriend. She avers that she heard counsel make such a promise to Cervantes.

No contradictory affidavit from counsel has been provided. Accordingly, the Court will hold an evidentiary hearing to resolve this claim. If, after the evidentiary hearing, the Court finds against Casas on this claim, then Casas' waiver of § 2255 rights is enforceable and bars his remaining claims.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

### A. Summary of Offense[1]

On December 2, 2005, Casas was the driver of a Dodge Neon that entered the U.S. Border Patrol Checkpoint in Falfurrias, Texas. Both Casas and the adult passenger in the vehicle, Martha Alicia Silva, reported that they were United States citizens.[2] Casas explained that the vehicle belonged to him and that he was going to San Antonio, Texas, where he resided. The agent believed this to be somewhat suspicious, as he observed that the vehicle had Arkansas license plates. A service canine alerted to the trunk of the vehicle, and the agents requested and received permission to search the trunk of the vehicle. Once the trunk was opened, the canine alerted to luggage within the trunk. Casas agreed to a further consent of the vehicle and proceeded to the secondary inspection area.

In the secondary area, agents conducted a search of the suitcases located within the trunk. They found four bundles wrapped in cellophane plastic inside two suitcases, containing a total of 14.54 kilograms of marijuana. Both Casas and Silva were arrested and provided their Miranda rights. Casas admitted that the marijuana belonged to him and stated that he was taking it to San Antonio, where he planned to smoke it or sell it to anyone who wanted to buy it.

---

[1] The offense conduct as set forth herein is derived from Paragraphs 4 through 8 of the Presentence Investigation Report ("PSR").

[2] Traveling with the pair was Silva's minor daughter, age 4.

Silva provided a statement to DEA agents the following day, in which she explained that she was Casas' girlfriend and had rented the vehicle on November 30, 2005, to travel to McAllen, Texas in order to visit family. Silva reported that she and Casas stayed at her family's residence in McAllen for three days. She stated that prior to leaving McAllen, to return to Rogers, Arkansas, she went to the store, and Silva told her he would get their bags ready. When asked by agents whether Casas used illegal drugs, Silva admitted that she has, in the past, observed Casas use marijuana.

Casas stated that he purchased the marijuana on December 2, 2005 in McAllen for $1,000, using money he had saved from his employment in Arkansas. Casas stated that while Silva and her family were out shopping, he wrapped the marijuana and placed it in a suitcase and duffle bag. Casas declined to answer any questions regarding from whom he had purchased the marijuana.

**B.     Criminal Proceedings**

On December 15, 2005, Casas was charged in a single count indictment with possession with intent to distribute approximately 14.54 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

In exchange for his guilty plea to the indictment and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive maximum credit for acceptance of responsibility and to recommend a sentence at the lowest end of the applicable guideline range. (D.E. 17 at ¶¶ 1-2.) The plea agreement included a waiver of Casas' right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that Title 18 U.S.C. §3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b).

3

> Additionally, the defendant is aware that Title 28, U.S.C. §2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 17 at ¶ 7 (emphasis in original).) The agreement was signed by both Casas and his counsel. (D.E. 17 at 5.)

At Casas' rearraignment, the Court specifically questioned Casas under oath to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing right to file a § 2255 motion. After discussing his waiver of his appellate rights, the Court admonished:

> **THE COURT:** You're also giving up another independent right, and that is a right to file a post-conviction remedy, wherein you could try to set aside your conviction and/or your sentence by challenging such matters as jurisdiction, constitutionality, or ineffective assistance of counsel, to name a few. Do you understand that you're giving up these rights and do you want to go forward? Mr. Casas?
> **THE DEFENDANT**: Yes, ma'am.

(D.E. 35, Rearraignment Transcript ("R. Tr.") at 11.)

Also at the rearraignment, Assistant United States Attorney Thorpe summarized Casas' plea agreement, and included a reference to the fact that the defendant would be waiving certain appellate rights that the Court had already discussed. (R. Tr. at 12.) Immediately following that summary, Casas testified that the plea agreement was his, that it was correct, that it was the entire agreement, and that he understood it. (R. Tr. at 12.) The Court showed Casas a written copy of the plea agreement. Casas testified that the agreement was his, that he had signed the last page, and that he had read the document completely and discussed it completely with his attorney before signing it. (R. Tr. at 13.) It is clear from the foregoing that Casas' waiver of § 2255 rights was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255

rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR"). (D.E. 18.) Because Casas was determined to be a career offender, the PSR calculated his base offense level at 17. (PSR at ¶ 21.) The PSR recommended that Casas be given a three-level credit for acceptance of responsibility, thereby resulting in a total offense level of 14. (PSR at ¶¶ 21-23.)

Casas had 8 criminal history points, which would typically establish a criminal history category of IV. Again, though, because Casas was a career offender, his criminal history category was VI. (PSR at ¶ 30.) His resulting guideline range for a term of imprisonment was 37 to 46 months. (PSR at ¶ 42.) Casas, through counsel, objected to the determination that he was a career offender for purposes of the offense level, pointing out that his two previous felony conviction were for offenses when he was 21 and 22, and that the two terms served on the two offenses were concurrent. Counsel also argued that a category VI substantially over-represented the defendant's criminal history.

Sentencing was held on April 4, 2006. (D.E. 23; see generally D.E. 36, Sentencing Transcript ("S. Tr.").) The government recommended the lowest end of the guidelines, consistent with its obligations in the plea agreement, and Casas' counsel asked for the lowest end of the guidelines or even a downward departure. (S. Tr. at 5-7.) The Court noted that Casas' criminal history was a violent one and also noted that he had been in prison for a number of years, so had not had the opportunity to commit further crimes. (S. Tr. at 6-7.) The Probation department recommended the top end of the guidelines, primarily because the offense was committed less than a year after his being released from an 8-year prison sentence. (S. Tr. at 7.) The Court sentenced Casas to 45 months, and imposed a $50 fine and $100 special assessment. (S. Tr. at 8; D.E. 24.)

Consistent with his waiver of appellate rights, Casas did not appeal. Casas' timely § 2255

motion was received by the Clerk on October 10, 2006. (D.E. 26.) It is timely.

## III. MOVANT'S ALLEGATIONS

In his motion and supplemental motion, Casas asserts three grounds for relief. First, he asserts a claim of ineffective assistance of counsel, which is premised on a number of alleged errors by his counsel, Rogers. These can be grouped into three types of claims. The first group of claims allege that counsel provided him with false information to induce his guilty plea and failed to object to the "breaching" of the plea agreement. In particular, he claims that counsel misadvised him as to the consequences of entering the plea agreement and what type of sentence he would receive because of his prior convictions. The second group challenges his counsel's conduct's at sentencing, and, in particular, counsel's alleged failure to investigate and determine the constitutionality of the prior offenses used against Casas at sentencing. Third, he makes a general claim that counsel "failed to subject the government theories to an adversarial challenge." (D.E. 30 at 3-4.)

Casas' second ground for relief is that there was a violation of Rule 11 because the Court allegedly did not advise him that he would be subject to additional punishment in light of his previous Texas convictions. He also argues that his prior convictions were not "violent felonies" and thus the Court erred in sentencing him as a career offender.

Casas' third ground for relief is titled as one that there was a breach of the plea agreement. His memorandum makes clear, however, that this claim essentially reiterates one of his earlier ineffective assistance of counsel claims. Specifically, he alleges that his counsel told him that the district court would sentence him to exactly two years as a result of the plea agreement. (D.E. 30 at 3, 5.) In his attached declaration, he provides a slightly different version of events, stating that his attorney told him that his "range would be 24-30 months and the government would recommend the lowest end of that guideline range." (D.E. 30, Ex. 1 at 1.)

6

In its response, the government appears to concede that Casas' claim that his counsel promised him a sentence of 24 months requires an evidentiary hearing. See D.E. 37 at 5 (admitting that an evidentiary hearing "may ultimately be required to resolve this issue," but noting that "Casas' claims are strongly rebutted by the record"); id. at 19 ("Accordingly, this Court should appoint counsel for Casas and set this case for a hearing on the narrow issue of whether Casas was denied his right to the effective assistance of counsel by virtue of counsel's alleged promise of a 24-month sentence.").

## IV. DISCUSSION

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

As the government notes, the record strongly supports a finding that Casas' waiver was knowing and voluntary and thus bars most of his claims. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights). His challenge to the validity of the Rule 11 colloquy, as well as his claim that he received ineffective assistance of counsel with regard to his plea, however, arguably fall outside the scope of his § 2255 waiver, because they are direct challenges to the validity of the plea and, thus, the waiver. See, e.g., United

7

States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to these two claims.

**B.     Alleged Violation of Rule 11 By Court**

Casas claims that this Court failed to advise him during his rearraignment that he could be subject to a higher penalty as a result of his previous convictions. This contention is flatly contradicted by the transcript of the rearraignment:

> THE COURT: I want to make sure that you and your attorney have talked about how and discussed how the advisory sentencing guidelines might apply in your case, including how criminal history can impact your guidelines or your sentence.
> Criminal history is composed of all your prior convictions, plus points if you were released from custody within two years of this event, or if you were on supervision at the time of this event. The higher those points, the higher your guidelines could be.
> Have you discussed all these matters and do you understand them – have you discussed them with your attorney and do you understand them? Mr. Casas?
>
> THE DEFENDANT: Yes, Ma'am.

(R. Tr. at 15-16.) Thus, this challenge to his waiver fails on the plain record of the case and this claim is DENIED.

**C.     Alleged Ineffective Assistance of Counsel As to Plea**

Casas' second challenge to his waiver is that he was denied effective assistance of counsel during the plea negotiations because his counsel promised him he would receive a 24-month sentence, when he in fact received a 45-month sentence. He claims that, had he known of his true sentencing

exposure, he would have proceeded to trial instead of pleading guilty.[3]

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As the government notes, Casas' statements under oath strongly refute any claim that his counsel promised him a 24-month sentence. At his rearraignment, Casas testified that he had had enough time to talk with his attorney, that he had told his attorney everything he knew about his case, that his attorney came to see him in jail and took his phone calls, that his able to communicate with his attorney completely, that his attorney had answered all his questions, and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 7.) The Court informed Casas of the various trial rights

---

[3] In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Casas must show that, absence his counsel's deficiencies, he would have proceeded to trial. See United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

9

available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 7-10.)

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Casas the maximum punishment that he might receive. Specifically, the Court informed him that he faced a maximum punishment of five years and a maximum fine of $ 250,000. The Court also informed him that there was a mandatory $100 special assessment, and a minimum supervised release term of two years. (R. Tr. at 14.) Casas testified that he understood. (R. Tr. at 14.) Casas testified that no one had promised him anything that was not in the written plea agreement, including any promise for leniency, a motion for downward departure or safety valve relief. (R. Tr. at 13.) He later testified that no one had forced him to plead guilty and that his decision to plead guilty was entirely voluntary. (R. Tr. at 18.) He testified that he understood that if his sentence was more severe than he expected, he would still be bound by his plea. (R. Tr. at 13-14.) The transcript also establishes that Casas understood that only the Court could determine the sentence that he would ultimately receive and the Court would be unable to determine the sentence until after the time of sentencing. (R. Tr. at 17-18.)

Casas' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Casas' statements at the rearraignment suggest that his allegation of a promise by his attorney should be denied.

Notably, however, the Fifth Circuit has recognized a narrow exception that allows a defendant to proceed with a claim that he was promised a specific sentence, even in the face of his contradictory statements under oath. See United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998). Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though

10

inconsistent with his representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. 132 F.3d at 1110. A defendant is entitled to an evidentiary hearing on the issue if he can produce evidence showing the merit of his allegations, typically in the form of an affidavit from a reliable third party. Id.

Casas has provided the affidavit of his girlfriend, Silver, which alleges that Rogers "clearly explained that since Andres entered into a plea agreement with the government, that Andres Casas would be sentenced to 24-30 months because of the amount of narcotics and that the government promised Andres Casas would not be in prison more than 24-months since he entered a plea agreement." (D.E. 33 at Ex. 2, Silva Affidavit.)

In his own affidavit, Casas avers:

> [H]ad [Richard W. Rogers] not told both Martha Silva and Affiant that the Affiant was going to only receive 2-years for his guilty plea to the indictment, Affiant would not have entered into the plea agreement.

(D.E. 33-2 at 1.) Additionally, in his signed supporting memorandum, Casas claims that "Mr. Rogers in no uncertain terms promised petitioner that he would be sentence [sic] to 2-years."

In response to these two affidavits, the government has *not* provided an affidavit from Rogers as to whether or not he made such a promise. Additionally, as previously noted, the government's response acknowledges that an evidentiary hearing is needed to decide this issue. (D.E. 37 at 19.) Accordingly, the Court will hold an evidentiary hearing on this limited claim.

## V. CONCLUSION

For the above-stated reasons, Casas' claim that the Court failed to comply with Rule 11, Fed. R. Crim. P. by allegedly failing to advise him of the effect of his criminal history on his sentence, is DENIED. This matter is set for an evidentiary hearing to address Casas' claim that he was denied

ineffective assistance of counsel during the plea process because his counsel allegedly promised him he would receive a 24-month sentence. Casas' remaining claims will be held in abeyance pending the outcome of the evidentiary hearing. If his ineffective assistance claim as to his plea is denied, then those remaining claims are barred by his waiver of § 2255 rights and will also be denied.

The evidentiary hearing will be held on at **9 a.m. on Wednesday, July 18, 2007**.

Additionally, Casas is entitled to counsel for the hearing. See RULES GOVERNING SECTION 2255 PROCEEDINGS 8(c). If he cannot afford an attorney and wants the Court to appoint one for him, he must submit information from which the Court may determine whether he is financially eligible for counsel under 18 U.S.C. § 3006.[4] To that end, the Clerk shall mail to Casas a blank application for leave to proceed *in forma pauperis*. Within twenty days of the entry of this order, Casas shall complete and return the application with his original signature. Casas must also have the institution where he is incarcerated certify the information requested regarding his inmate trust account. Once the Court receives this information from him, it will then determine whether he is financially eligible for counsel.

ORDERED this 11th day of April, 2007.

_____
Janis Graham Jack
United States District Judge

---

[4] Although he was initially represented by appointed counsel in his criminal proceedings, Casas retained counsel within days of his initial appearance and was then represented by retained counsel throughout his underlying criminal case. He has not provided any factual information to show that he no longer has the financial means to afford counsel.