**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-05-751 |
| | § | C.A. No. C-06-448 |
| ANDRES CASAS, | § | |
| Defendant-Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
<u>AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Andres Casas' ("Casas") motion to vacate, set aside or correct

sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum. (D.E. 26, 30.) The motion also

includes allegations raised in Casas' later motion to supplement, which the Court granted. (D.E. 33,

34.) The Court has also considered the other documents filed by both parties, including the

government's motion for summary judgment and alternative response and motion to dismiss (D.E. 37,

38), Casas' reply (D.E. 40), and Casas' motion for leave to amend (D.E. 57).

**I. BACKGROUND**

The Court's April 11, 2007 Order setting the evidentiary hearing in this case sets forth the

factual background of both Casas' offense and the criminal proceedings. (D.E. 39.) Familiarity with

that Order is assumed, and that background will not be repeated in detail here. Significant for

purposes of the instant Order is the fact that Casas' plea agreement contained a waiver of his right to

file any § 2255 motion, and that the rearraignment transcript fully supports a finding that Casas' waiver

was knowing and voluntary. (<u>See</u> D.E. 39 at 3-5, 8.)

Nonetheless, several of Casas' § 2255 claims arguably fell outside the scope of his waiver,

because they challenged the validity of his plea. The Court addressed those claims in its April 11,

2007 Order. (D.E. 39.) As to the first, i.e., a claim that the Court violated Rule 11 by alleged failing to tell him that he could be subject to a higher penalty as a result of his previous convictions, the Court denied that claim, finding that it was clearly contradicted by the record.[1] (D.E. 39 at 8-9.) His other claim outside the scope of his waiver was that he received ineffective assistance with regard to his plea because his counsel promised him he would receive a 24-month sentence, when he in fact received a 45-month sentence. The Court set an evidentiary hearing to address this claim. (D.E. 39 at 9-12.)

## A.    Evidentiary Hearing

The evidentiary hearing was held on September 12, 2007, and Casas was represented at the hearing by appointed counsel, Assistant Federal Public Defender Jose Gonzalez-Falla. (D.E. 54; see also Docket Entries and minutes dated July 18, 2007 (appointing counsel).) One week before the hearing, on September 5, 2007, Casas filed a motion for leave to amend his § 2255 motion. (D.E. 57.) In it, he requested leave to include a claim that his criminal counsel in the underlying proceedings, Rick Rogers, was deficient for failing to advise him that the career offender guideline was applicable to his case. Casas claimed that, had he been properly admonished regarding this fact, he would not have pleaded guilty. (D.E. 57 at 2.)

At the beginning of the hearing, Casas' counsel made clear that Casas wanted to add the new claim, but also wanted to withdraw the claim on which the Court had originally set the hearing, i.e., the claim of a promised 24-month sentence. Although the government did not file a written opposition to the motion to amend, it did argue against the motion at the beginning of the hearing. For the reasons

---

[1] Casas filed what he called an "interlocutory" appeal from that portion of the Court's Order. (D.E. 41.) Subsequent to the appointment of counsel, however, Casas voluntarily dismissed his appeal. (D.E. 56.)

briefly discussed at the hearing and set forth more fully herein, the Court orally granted the motion to amend.

**B.      Motion to Amend**

Rule 15(a) of the Rules of Civil Procedure states that a party may amend his pleading after a responsive pleading has been served "only by leave of court or by written consent of the adverse party."  Rule 15(a) goes on to state, "leave shall be freely given when justice so requires."

In this case, the claim Casas sought to add was time-barred under the statute of limitations governing § 2255.  Thus, it could be added only if it related back to the original timely § 2255 motion; otherwise, the amendment would be futile.  Fed. R. Civ. P. 15(c); see also Mayle v. Felix, 545 U.S. 644 (2005) (applying rule in state habeas proceeding).  Rule 15(c)(2) provides that an amendment relates back to the original pleading when the new claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). As explained by the Mayle court, this requires that there be a "common 'core of operative facts' uniting the original and newly asserted claims."  Mayle, 545 U.S. at 659 (citations omitted).

Especially given the Court's duty to liberally construe *pro se* pleadings, United States v. Riascos, 76 F.3d 93, 94 (5th Cir. 1996), the Court found that the claim Casas sought to add shared a "common core of operative facts" with Casas' original claims.  In his original *pro se* motion, Casas claimed that counsel misled him "as to the consequences of entering the plea agreement and the qualification of the prior convictions." (D.E. 33 at 4.)  He also claimed that his attorney provided him with "false information to induce a guilty plea" and that counsel promised him he would receive a two-year sentence.  (D.E. 30 at 5, 7.)

Although Casas did not make the precise challenge that he makes in his amended claim (i.e., that counsel failed to advise him that he could be sentenced as a career offender), he included general

3

statements challenging his counsel's advice regarding his likely sentence, and a general claim that his guilty plea was induced by "false information" from his attorney. Based on this, the Court found that Casas' amended claim shared a common core of facts with his original motion.

For these reasons, the Court granted Casas' motion to amend. (D.E. 57.) The Court also granted Casas' oral motion to withdraw his claim of ineffective assistance based on the alleged promise of a 24-month sentence.

## II. ANALYSIS

### A.  Merits of Claim That Rogers Failed to Advise Casas of the Career Offender Enhancement

#### 1.  General Standards for Ineffective Assistance Claims

Casas' claim that his counsel underestimated his sentence by failing to advise him that his prior criminal conduct could result in the career offender enhancement is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## 2.     Evidence At Evidentiary Hearing

Casas claims that his counsel in the underlying criminal proceedings, Rick Rogers, failed to advise him that his prior convictions could result in the application of the career offender enhancement and increase his sentence.   He further claims that, had he known of his true sentencing exposure, he would have proceeded to trial instead of pleading guilty.  (D.E. 57 at 2.)

Rick Rogers' testimony at the evidentiary hearing refutes Casas' claim.  Rogers testified that he has been an attorney for over 30 years, that he practices in state and federal courts, and that he is board-certified in criminal law.  He explained that he was retained by Casas' fiancé or wife to represent Casas after his arrest.

Rogers testified that Casas had confessed at the checkpoint and that Rogers' review of the Border Patrol records indicated that there was an adequate legal basis for stopping Rogers and for the search of his vehicle.  Thus, Rogers believed the government had a strong case.  Rogers further testified that Casas was adamant that he did not want his wife implicated in the offense, and that he wanted to plead guilty from the "very start" of the case.  Rogers also testified that he discussed Casas' prior criminal history with him, and the fact that his prior convictions could increase his sentence. He also recollected a discussion with Casas about whether or not his two prior robbery convictions were "violent felonies."

Rogers admitted that he did not know whether he ever told specifically that he would be a career offender or what specific sentence he faced.  He testified that it was his customary practice, however, to provide a reasonable estimation of the likely sentence only if a client asks for such an estimate.  It was also customary for him to discuss with each client generally how the Guidelines work.  Finally, he said that he always emphasizes that if the client is found guilty after a trial, his sentence will likely be higher than if he pleads guilty.

Casas did not testify at the hearing.

### 3.      Applicable Legal Standards

Casas relies heavily on <u>United States v. Grammas</u>, 376 F.3d 433 (5th Cir. 2004) and <u>United States v. Herrera</u>, 412 F.3d 577, 582 (5th Cir. 2005) to support his claim that counsel was deficient. In <u>Grammas</u>, the Fifth Circuit held:

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by <u>Strickland</u>.  When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. ...   By grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

<u>Grammas</u>, 376 F.3d at 436-37 (internal citations omitted) (alterations in original).

In <u>Grammas</u> and <u>Herrera</u>, however, the defendant proceeded to trial instead of pleading guilty. In the instant case, by contrast, Casas pleaded guilty, and was informed of the maximum sentence he would receive by the Court.  Moreover, in order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Casas must show that, absent his counsel's deficiencies, he would have proceeded to trial. <u>See</u> <u>United States v. Glinsey</u>, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  This is a showing that cannot be met here, as discussed in more detail in the following sections.

**4.      Application to Casas' Claim**

At the conclusion of the evidence, and after hearing argument from the parties, the Court denied Casas' claim and denied his § 2255 motion. For the reasons set forth at the hearing, and in more detail herein, Casas § 2255 motion is DENIED.

**a.      Deficiency**

First, the Court finds that Rogers discussed with Casas the issue of whether his prior robbery convictions were "violent felonies." Indeed, Casas' sworn testimony at the rearraignment was that his counsel had discussed the effect of his prior convictions with him:

> THE COURT: I want to make sure that you and your attorney have talked about how and discussed how the advisory sentencing guidelines might apply in your case, including how criminal history can impact your guidelines or your sentence.
> Criminal history is composed of all your prior convictions, plus points if you were released from custody within two years of this event, or if you were on supervision at the time of this event. The higher those points, the higher your guidelines could be.
> Have you discussed all these matters and do you understand them – have you discussed them with your attorney and do you understand them? Mr. Casas?
>
> THE DEFENDANT: Yes, Ma'am.

(D.E. 35, Rearraignment Transcript ("R. Tr.") at 15-16.) Even more significantly, Casas repeatedly states in his *pro se* § 2255 filings that he discussed the issue of violent felonies with Rogers. (D.E. 30 at 5 (in discussing claim that he was induced into pleading guilty, Casas claims that he advised Rogers that his prior convictions "did not qualify as violent felonies"); D.E. 33 at 3 (in discussing claim that Rogers provided him with false legal advice concerning his plea and § 2255 waiver, Casas states that Rogers informed him that the government "did not have to establish that the conviction(s)

were violent felonies . . . [and] that the statutory elements of the alleged prior convictions qualified as "violent felonies").

It is true that Rogers may not have used the specific term "career offender." Nonetheless, in this type of drug case, the only context in which it would matter whether Casas' prior convictions were "violent felonies" or not would be in the context of determining whether he was a career offender. The Court thus concludes that Casas has not met his burden of showing any deficiency on the part of Rogers.

### b.      Prejudice

Finally, even if there were some showing of deficiency, the Court concludes that Casas has failed to meet his burden of proving prejudice, i.e., of showing that would have proceeded to trial instead of pleading guilty if he had been "properly" advised as to his sentence. Rogers' testimony was clear that Casas wanted to plead guilty from the start of this case.

Additionally, the rearraignment transcript clearly establishes that Casas' decision to plead guilty was his own and that it was entirely voluntary. At his rearraignment, Casas testified that he had had enough time to talk with his attorney, that he had told his attorney everything he knew about the charges against him, that his attorney had answered all of his questions, that his attorney came to see him in jail and took his phone calls, that he was able to communicate with his attorney completely and that he was satisfied with the advice and efforts of his attorney. (R. Tr. at 7.) The Court informed Casas of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 7-10.)

Consistent with Rule 11, Fed. R. Crim. P., the Court explained to Casas the maximum punishment that he might receive. Specifically, the Court informed him that he faced a maximum punishment of five years in prison and a maximum fine of $ 250,000. The Court also informed him

that there was a mandatory $100 special assessment, and a minimum supervised release term of two years. (R. Tr. at 14.) Casas testified that he understood. (R. Tr. at 14.) Significantly, the actual sentence he received was less than the maximum he knew he faced.

Casas further testified that no one had forced him in any way to plead guilty, and that his decision to plead guilty was entirely voluntary. (R. Tr. at 18.) Casas told the Court that there had not been any other agreements with him that were not in the written plea agreement, and that no one had promised him leniency or that he would get a motion for downward departure or safety valve relief. (R. Tr. at 13.)

Casas told the Court that his attorney had discussed with him how the Sentencing Guidelines might apply in his case and that he understood that certain facts could increase his sentence, including his criminal history. (R. Tr. at 15-16.) The transcript also establishes that Casas understood that only the Court could determine the sentence that he would ultimately receive and that anyone else's estimate, including his attorney's, would not be binding on the Court:

> **THE COURT:** Do you understand that your attorney's opinion of the guidelines is not necessarily that of mine, and that I'm not going to be able to determine the sentence for your case . . . until time of sentencing, after which you have already had an opportunity to challenge . . . the facts reported by the Probation Office. That after it's been determined what advisory guidelines do apply in your case, I have the authority to give you a sentence that is higher than or lower than the guidelines, the advisory guidelines.
> ...
> Do you understand that, Mr. Casas?
>
> **DEFENDANT CASAS:** Yes, ma'am.

(R. Tr. at 17-18.)

Casas' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431

U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Put simply, Casas' sworn statements preclude the relief he seeks here. He knew of the potential punishment he faced, he knew that any estimates by his attorney were not binding on the Court, and his plea was knowing. Moreover, he testified that his decision to plead guilty was voluntary and that no one had forced or induced him to plead guilty.

Furthermore, at sentencing, after having seen the PSR and his guideline range, Casas reaffirmed that he was still satisfied with the advice and efforts of his attorney. (S. Tr. at 4.) This fact further undermines his claim that his attorney gave him incorrect advice concerning his likely sentence, and that he would have gone to trial if he had known his "true" sentencing exposure. In short, other than Casas' own belated assertions that he would have pleaded guilty had he known he could be sentenced to 45 months, there is nothing in the record to support that assertion.

Accordingly, the Court DENIES Casas' claim that his counsel was constitutionally ineffective for failing to advise him he faced enhancement as a career offender.

**B.      Waiver of § 2255 Rights As Bar To Remaining Claims**

As noted in the Court's April 11, 2007 Order, it is clear from the rearraignment that Casas understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (See D.E. 39 at 3-5, 8.) See also United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994) (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Again, Casas' statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; Cothran, 302 F.3d at 283-84. Those statements support the Court's conclusion that his wavier was knowing and voluntary.

Having determined that Casas' sole remaining challenge to the validity of his plea and § 2255 waiver fails on its merits, the Court concludes that the remaining claims, all unrelated to his plea, are barred by his voluntary and knowing waiver of § 2255 rights. Wilkes, 20 F.3d 651 (enforcing defendant's voluntary and knowing waiver of § 2255 rights). Accordingly, his § 2255 motion is DENIED in its entirety.

## C.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Casas has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.

United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Casas is not entitled to a COA as to any of his claims. That is, reasonable jurists could not debate the Court's resolution of his ineffective assistance claim as to the plea or the Court's earlier Order denying Casas relief on his claim that the Court violated Rule 11. Similarly, jurists of reason would not find it debatable that his valid and knowing waiver precludes consideration of his remaining claims.

### III. CONCLUSION

For the above-stated reasons, Casas' motion for leave to amend (D.E. 57) is GRANTED. Casas' motion pursuant to 28 U.S.C. § 2255 (D.E. 26, 30), including his amended claim (see D.E. 57) is DISMISSED WITH PREJUDICE. The Court also DENIES Casas a Certificate of Appealability.

ORDERED this 14th day of September, 2007.

_____
Janis Graham Jack
United States District Judge

12